Will of Kaebisch: Kolberg and another, Appellants, vs. Kaebisch, Respondent.

*January 14—February 25, 1947.*

*Peter F. Leuch,* attorney, and *A. G. Schwefel* of counsel, both of Milwaukee, for the appellants.

For the respondent there was a brief by *Alvin L. Zelonky* and *Gold & McCann,* all of Milwaukee, and oral argument by *Mr. Ray T. McCann* and *Mr. Zelonky.*

FRITZ, J. The instrument offered for probate by Howard E. Kaebisch, as the will of his mother, Ernstine Kaebisch, is dated April 23, 1945. She died on August 24, 1945, over seventy-six years of age, and was survived by her daughter Viola Kolberg, her son, Howard E. Kaebisch, and his son, Elmer Kaebisch. Under the terms of that instrument the testatrix divides her estate (so far as here material) equally between her only heirs, viz., her son Howard and her daughter Viola. The latter and Elmer Kaebisch objected to the probate of that instrument as the last will of Ernstine Kaebisch, on the grounds that the execution thereof "was procured by the exercise of undue influence upon" the testatrix by Howard E. Kaebisch, and that the instrument "is not the last will and testament of the deceased." On the trial of the issues thus raised, the following facts were clearly established with but virtually little dispute in the evidence.

The testatrix and her husband (who died in August, 1944) had resided many years in Milwaukee county on a fifty-four-acre farm worth about $10,000. In November, 1944, the testatrix sold the cattle and most of the other personal prop-

erty. At that time there were living with her Viola Kolberg and her husband, and upon their moving two miles away to New Butler, the testatrix continued to live on the farm alone until November 12, 1944. On that day she was found sick in her home by Viola Kolberg and her husband, who called Elmer Kaebisch and also a doctor who ordered testatrix removed to Milwaukee County Hospital. She stayed there until on November 16, 1944, she went to her daughter Viola's home in New Butler. Her son Howard saw her at the hospital and had an argument there with his son Elmer as to why she was there; and Howard also went to Viola Kolberg to find out why their mother was at the hospital. Before the testatrix was taken to the hospital on November 12, 1944, upon being found sick in her home by Viola Kolberg and her husband, Elmer Kaebisch removed, by cutting a cord without testatrix's knowledge, a key which she had hanging on the cord around her neck. With this key Elmer, on the evening of that day, opened, in the testatrix's farm house, a metal box belonging to testatrix, in the presence of Elmer's wife, Viola Kolberg and her husband, and Emma Hackbarth, a neighbor called in by them, and they inspected everything in the box, including about $5,400 in money which they counted; and then, after making a list of everything, they put all of it and also the list in the box. Viola Kolberg then took the box to her home and Elmer kept the key until he returned the key and Viola Kolberg returned the box to testatrix when she came to Viola's home upon leaving the hospital on November 16, 1944.

When about twenty-one years of age, Howard had left his parents' farm after a quarrel and fight with his father, and thereafter there apparently was friction in the family between Howard and his parents and also his sister Viola. She appears to have helped her parents on the farm until the time of her marriage and the removal of her family to Dayton, Ohio, in about 1937. While living there she corresponded with her parents and also through Emma Hackbarth. From 1936 to November, 1944, Elmer Kaebisch helped his grandparents on

the farm and with their chores, and his wife also helped, and they were helping testatrix on the farm when Viola Kolberg and her family returned from Ohio to the farm on September 16, 1944. An earlier will had been made by the testatrix on August 16, 1944, but objections to proof of its contents were sustained by the trial court.

In addition to the proof as to the matters stated above, there was introduced by the parties on the trial also evidence in which there was considerable conflict in relation to the issues raised to the probate of the will of April 23, 1946, on the grounds that the execution thereof by the testatrix was procured by the exercise of undue influence upon her by Howard E. Kaebisch. In relation to the evidence on that issue, Judge McDonald stated the following, in the course of his decision admitting the will to probate, to wit:

"Well, it appears that in this family there was a pretty bitter feeling. The only one that suffered by it was this poor old lady. There is no claim here that she was incompetent to make a will. The only claim here is that she was unduly influenced. There has been no proof of that which I feel is competent to show in the first place that she was a woman susceptible to undue influence. There is no proof of that at all, that she would be easily influenced. It is only indirect proof that the son unduly influenced her, it is all indirect; there is no positive proof, nothing that the court could grasp, except a bitter feeling between the son and the daughter, but so far as she was concerned she was sane and capable of making a will. If she was sane and capable of making a will and knew the will that she had drawn previously included the grandson, who took a pair of scissors and cut the string holding her key to her box that contained some five thousand dollars, . . . if she knew that—and the presumption was she did know it—it is a wonder that she left anyone that was a party to taking the key or opening her strong box anything. Now, it appears from Mrs. Kolberg that she returned the box, but when she [testatrix] left there and went to her son she didn't give up the box, as she should have done, to her mother. . . . The most she had was simple possession there. It was somebody else's prop-

erty. I am surprised that a warrant was not issued for her arrest instead of replevin."

And in the findings of fact the court stated, in relation to the issue as to the exercise of undue influence, that "there is no evidence . . . that the testatrix was a person subject to undue influence, or that there was opportunity on the part of Howard E. Kaebisch to exercise undue influence upon said testatrix, nor is there evidence in the record of any disposition on the part of Howard E. Kaebisch to influence said testatrix unduly for the purpose of procuring an improper favor;" that "the will is a natural will and in that it divides the entire estate of the testatrix between" her two heirs, Viola Kolberg and Howard E. Kaebisch, who are the only children of the testatrix. Conclusions of law and judgment were entered accordingly.

The facts thus found and stated by the court, and its conclusions of law and judgment entered thereon, were fully warranted by the evidence. As Judge McDonald rightly stated in his decision, there was no proof that testatrix was susceptible to undue influence or would be easily influenced, or that there was any act or conduct on the part of Howard E. Kaebisch which can be deemed to have directly unduly influenced her, or by which she could have been indirectly influenced by him by reason of any act or conduct on his part or on the part of his attorney, Alvin Zelonky, whom the testatrix consulted as her attorney in relation to drafting for her the will in question. On the contrary, the court's findings that no such undue influence was exercised either directly or indirectly, and that the instrument in question was the genuine and valid and natural will of the testatrix, can be deemed warranted particularly by the undisputed facts—

(1) that when testatrix was so ill in her home that she had to be removed to the hospital, her grandson, Elmer, in the presence of her daughter, Viola Kolberg, cut the string and removed from her person without her knowledge the key to her box containing about $5,400 in money;

(2) that after the testatrix was taken to Viola Kolberg's home and later to Howard E. Kaebisch's home, Viola Kolberg wrongfully refused to give up the box to her mother so that to endeavor to regain possession thereof she had to resort to replevin proceedings;

(3) that to thwart such recovery, Viola instituted proceedings for the appointment of a guardian for her mother on charges that she was an incompetent, and that by such proceedings Viola succeeded in delaying the surrender of the box until she was finally ordered by the county court to produce the box in court, which ordered it placed in the custody of the county treasurer; and

(4) that Viola Kolberg admitted in her testimony during the proceedings for the probate of the will that the only reason she claimed there should be a guardian for her mother was because of the age of the mother; that she knew that mentally the mother was all right, and there was nothing wrong with her, that she was fully rational, and knew what she was doing, who her heirs were, and what property she had, and that the only reason why Viola Kolberg made the petition to have a guardian appointed was to prevent the taking of the strong box to her brother's place.

After that wrongful conduct and mistreatment of the testatrix by Viola Kolberg and Elmer Kaebisch, it was but natural that the testatrix did not want her former will, under which they alone were the beneficiaries, to remain in effect; and as Judge McDONALD rightly stated, it is a wonder that she left anything to anyone who was a party to taking the key or opening her strong box.

Likewise, upon due consideration of appellants' contentions that they were prejudicially affected by certain rulings of the court in relation to the admission or the exclusion of evidence, it is our conclusion the contentions cannot be sustained.

In connection with appellants' notice of appeal from the judgment dated March 8, 1946, admitting the will to probate, and also appointing William I. O'Neill administrator with the will annexed, they also noticed an appeal from an order made in June, 1946, denying their motion to have the case reopened for the purpose of receiving additional testimony. Sub-

sequent to O'Neill's appointment as administrator, and prior to the hearing of that motion, he had qualified to act as such administrator by filing his bond and oath, and as such administrator he duly entered his appearance in the proceedings on the hearing held pursuant to appellants' motion to reopen the case, and which resulted in the order entered in June, 1946, denying appellants' motion. The respondent, Howard E. Kaebisch, contends that both of appellants' appeals should be dismissed because no notice of such appeals was ever served upon O'Neill, the administrator. Respondent claims that as the administrator had duly entered his appearance for the estate in proceedings on the hearing in June, 1946, pursuant to appellants' motion to reopen the case, O'Neill as such administrator was and continued to be an "adverse party who appeared in the action or proceeding" and' that therefore there should have been served upon him, as re-quired by sec. 274.11 (1), Stats., appellants' notice of appeal from the order entered at that hearing. Respondent's claims and contentions must be sustained in respect to the notice of appeal from the order entered in June, 1946; and the appeal from that order must be dismissed as to all parties for the reasons stated in *Stevens v. Jacobs,* 226 Wis. 198, 201, 275 N. W. 555, 276 N. W. 638; *Cedar Point Park Asso. v. Lenney,* 232 Wis. 434, 287 N. W. 686; *Bond v. Breeding,* 234 Wis. 14, 290 N. W. 185. However, as O'Neill was not a party to the proceedings which culminated in the judgment dated March 8, 1946, pursuant to which he thereafter qualified as the administrator, he was not an adverse party upon whom it was necessary, under sec. 274.11 (1), Stats., to serve appellants' notice of appeal from that judgment. Consequently, as the notice of appeal therefrom was duly served on the respondent, Howard E. Kaebisch, and that appeal was duly perfected, it is not subject to dismissal by reason of any failure in respect thereto.

*By the Court.*—Appeal from the order entered in June, 1946, is dismissed. The judgment is affirmed.